UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIFFANY LEWIS

        Plaintiff,

v.

CITY OF MILWAUKEE

        Defendants.

Case No.: 25-cv-1573
Civil: 445 – ADA &
440 – Other Civil Rights

## COMPLAINT

COMES NOW, the plaintiff Tiffany Lewis, by her attorneys Padway & Padway, Ltd., by attorney Aaron DeKosky, and as and for her Complaint against Defendant, alleges and shows as follows:

### Nature of Action

1. This case involves a willful denial of Americans with Disability Act ("ADA") rights, Rehabilitation Act rights, violations of 42 U.S.C. §1983, and the harm that these violations and denial of rights caused the Plaintiff.

### Jurisdiction and Venue

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 as this complaint raises a question of federal law under 42 U.S.C. §12101 et seq., the Americans with Disabilities Act ("ADA"); 29 U.S.C. §701 et seq., the Rehabilitation Act of 1973; and 42 U.S.C. §1983.

3. Venue is proper in this District pursuant to 28 U.S.C. §1391 because both Plaintiffs and Defendants reside in this district and the events giving rise to Plaintiffs' claims occurred in this district.

4. Plaintiff was at all relevant times an employee within the meaning of the applicable statutes.

5. Plaintiff has exhausted all applicable administrative remedies.

**Parties**

6. Plaintiff Tiffany Lewis is a citizen of the State of Wisconsin and resides at 4250 N. 72nd Street, City and County of Milwaukee, State of Wisconsin, 53216.

7. Defendant City of Milwaukee is a corporation duly organized and existing under and by virtue of the laws and statutes of the State of Wisconsin. Said Defendant has a registered agent of Jim Owczarski and maintains a principal place of business at 200 E. Wells Street, Milwaukee, Wisconsin, 53202.

**FACTS**

8. Plaintiff incorporates and realleges all preceding paragraphs herein.

9. Plaintiff began employment with Defendant City of Milwaukee on or about October 22, 2018.

10. Plaintiff was employed by the defendant as an Operations Driver Worker in the Sanitation Department.

11. On October 9, 2020, Plaintiff reported a work injury.

12. On October 30, 2020, Plaintiff provided a return-to-work report indicating that she was able to return to work with light-duty restrictions on October 30, 2020.

13. On November 2, 2020, Plaintiff returned to work in what the defendant calls a "Transitional Duty" assignment.

14. On December 10, 2020, Plaintiff provided management with a return to work without restrictions, and on December 22, 2020, Plaintiff provided a clarification that she would be evaluated on an ongoing basis.

15. On December 30, 2020, plaintiff was advised that, as of December 31, 2020, she would be placed in the Sanitation Central Walnut Yard as a reasonable accommodation under ADA.

16. Plaintiff's shift duties would include driving plows, sweepers, and salters, and other tasks for a period of six months.

17. Plaintiff was prohibited from driving a residential garbage/ recycling route or loading/ collecting waste and recyclables, but had no other limitations.

18. Management indicated they would re-evaluate on June 30, 2021, for a return to full duty and proceed accordingly depending on your status at the time.

19. On February 23, 2021, plaintiff provided a medical status update indicating she was cleared to return to work on residential garbage collection as of April 5, 2021, provided she was placed permanently on specific routes.

20. On April 6, 2021, management determined that plaintiff would maintain her placement in the Sanitation Central Walnut Yard, rather than assigning plaintiff to a residential garbage route.

21. On or about May 2021, the plaintiff was assigned to a residential garbage route.

22. On December 14, 2021, the plaintiff suffered a second work injury.

23. On December 28, 2021, the plaintiff was assigned to duties at the "Self Help North Yard."

24. On December 29, 2021, plaintiff presented with a work restriction and was placed in what the defendant designated as a 'Transitional Duty' assignment, even though the assignment was commonly known as a "Fleets" assignment, and it was not a temporary or make-shift position assignment.

25. Plaintiff's "Fleets" position was a permanent position in the City of Milwaukee's Department of Public Works.

26. Plaintiff had no physical or other restrictions that prevented her from performing the duties required of her during her assignment in a "Fleets" position.

27. Management advised that Plaintiff could be assigned to a "Fleets" position so long as she provided a return to work with "no restrictions" for placement in the 'Fleets' position.

28. On April 25, 2022, plaintiff provided the defendant with a return to work containing 'no work restrictions' on the assumption that she would be assigned to a "Fleets" position.

29. Plaintiff was qualified to perform all of the essential functions of her assigned position in "Fleets" as an Operation Driver Worker.

30. Plaintiff's primary job duties working in a "Fleets" position for the utilities department included: driving utility trucks, driving dumpsters to and from necessary locations, driving a top loader that uses automation to pick up garbage carts, and driving a tri-axle dump truck hauling building materials and construction waste.

31. On February 16, 2023, following nearly a year of successful assignment in the Fleets department, the defendant requested that the plaintiff confirm whether she maintained permanent restrictions.

32. On February 24, 2023, plaintiff reiterated that she required no restrictions in her current assignment, but required an accommodation if assigned to a different position.

33. On March 16, 2023, the defendant sent the plaintiff a letter declaring that she was not qualified to perform her job duties, further advising that a pre-separation hearing had been scheduled for March 27, 2023.

34. On March 27, 2023, at the separation hearing, the defendant declared that the plaintiff cannot continue in her current assignment because she was in a 'temporary' position.

35. At the hearing, when the plaintiff asked the defendant why she was being removed from her position when she had been successfully performing all of her job duties for a year, the defendant responded: 'Your position was only a temporary position.'

36. At the hearing, when plaintiff followed up and asked whether there was any reason she was being removed from her position other than that the defendant labeled it 'temporary,' the defendant responded, 'We just can't have a transitional position turn into a permanent position, that's why we call it transitional.'

37. The defendant offered the plaintiff two options: (1) accept a termination or (2) accept an alternative position in a different department with lower pay.

38. Faced with termination or reassignment to a lower-paying position, plaintiff agreed to work in the alternative position offered that provided lower pay.

39. The Plaintiff could have, and was performing all of the job duties of her then-current position without the need for an accommodation.

40. There were many assignments available that the plaintiff could have performed with or without a reasonable accommodation.

41. On or about May 1, 2023, plaintiff filed a notice of injury and claim asserting that the defendant's demotion constituted a violation of law.

42. On September 14, 2023, the plaintiff filed a charge with the EEOC.

43. On February 26, 2025, the EEOC issued a determination that the defendant discriminated against the plaintiff, which included the following statement:

> Charging Party alleged that Respondent discriminated against her on the basis of her disability when it failed to provide her with a reasonable accommodation and demoted her, in violation of the ADA.
>
> I have determined that the evidence obtained during the investigation establishes reasonable cause to believe that Respondent subjected Charging Party to discrimination on the basis of her disability when it failed to provide her with a reasonable accommodation and demoted her, in violation of the ADA.

44. The EEOC further advised that it was referring the case to the DOJ for potential enforcement actions, but the DOJ took no action on the matter.

45. On July 17, 2025, the EEOC issued the Plaintiff with a right to sue letter.

46. To date, the defendant has refused to reinstate the plaintiff to a position equivalent to the positions she worked in successfully for nearly one year following her second traumatic incident.

## CAUSES OF ACTION

### Count I
### Violations of the Americans with Disability Act and its Amendments

47. Plaintiffs incorporate and reallege all preceding paragraphs herein.

48. Defendant is a qualified public entity as that term is defined in 42 U.S.C. § 12131.

49. 42 U.S.C. § 12132 and 42 U.S.C. § 12112 prohibit a covered entity from discriminating against a qualified individual.

50. Plaintiff is a qualified individual with a disability as defined by 42 U.S.C. § 12131(2) and 42 U.S.C. § 12111(8) and 42 U.S.C. § 12102.

51. At all relevant times herein, Plaintiff was the defendant's employee.

52. Defendant discriminated against Plaintiff because of her disability in violation of 42 U.S.C. §12132 and 42 U.S.C. § 12112.

53. Plaintiff was qualified to perform the essential functions of her position at the time that she was removed because of her disability.

54. Defendants failed to engage in an interactive process to determine whether and to what extent plaintiff would remain in an equivalent position.

55. Defendants transferred or modified the assignments of Plaintiff because of her disability.

56. Defendants failed to make reasonable accommodations for Plaintiffs' disabilities in violation of 42 U.S.C. §12132 and 42 U.S.C. § 12112.

57. As a direct and proximate result of Defendants' willful, knowing, and intentional discrimination and retaliation against Plaintiff, Plaintiff has suffered and will continue to suffer harm. Plaintiff is thereby entitled to recover general and compensatory damages in amounts to be established at trial.

58. Plaintiff has exhausted all administrative remedies.

### Count II
### Violations of the Rehabilitation Act of 1973

59. Plaintiff incorporates and realleges all preceding paragraphs herein.

60. Section 504 of the Rehabilitation Act, 29 U.S.C. §701, provides that: No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in,

be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

61. Defendants receive federal financial assistance within the meaning of § 504 and are thus prohibited from excluding, denying benefits to, or discriminating against their employees on the basis of a disability.

62. The Rehabilitation Act incorporates all provisions of the Americans with Disabilities Act.

63. The violations of the Rehabilitation are as described above in Count I.

64. Defendants failed to make reasonable accommodations for Plaintiff's disabilities as described above in Count I.

65. Defendants discriminated against Plaintiff because of her disability as described above in Count I.

66. In order to prevent Defendants from continuing to violate § 504, Defendants should be enjoined and prohibited from their unlawful and invidiously discriminatory practices described in this Complaint.

67. As a direct and proximate result of Defendants' willful, knowing, and intentional discrimination and retaliation against Plaintiffs, Plaintiffs have suffered and will continue to suffer harm. Plaintiffs are thereby entitled to recover general and compensatory damages in amounts to be established at trial.

68. Pursuant to 29 U.S.C. § 794a(b), Plaintiff is entitled to her reasonable costs and attorneys' fees.

69. Plaintiff has exhausted all administrative remedies.

## Count III
## Violations of the Civil Rights Act of 1871,
## Section 1983 of Title 42 of the US Code

70. Plaintiff incorporates and realleges all preceding paragraphs herein.

71. The City of Milwaukee deprived Plaintiff of a constitutional and federal statutory right by violating the Americans with Disabilities Act and the Rehabilitation Act as described above.

72. The defendant engages in systematic discrimination against employees with disabilities, including but not limited to the denial of reasonable workplace accommodations, in violation of the ADA. This discrimination was the result of the defendant's official workplace policy, custom, or practice established by officials in the City of Milwaukee and in cooperation with the Human Resources Office.

73. The official workplace policy, custom, or practice regarding discrimination against employees with disabilities, including but not limited to the denial of reasonable workplace accommodations, violated Plaintiff's federal rights under the ADA and the Rehabilitation Act.

74. The City of Milwaukee is a person under the meaning of Section 1983.

75. Plaintiff has exhausted all administrative remedies.

## Demand for Relief

76. Plaintiff incorporates and realleges all preceding paragraphs herein.

77. Defendant's conduct constitutes violations of the ADA, Rehabilitation Act, and Section 1983.

78. Plaintiff has suffered injury directly and proximately as a result of Defendant's unlawful discriminatory practices, policies, and procedures.

79. Plaintiff seeks all general, special, incidental, and consequential damages as shall be established at trial.

## Demand for Trial by Jury

80. Plaintiff demands a trial by jury on all issues herein so triable pursuant to Federal Rule of Civil Procedure 38.

WHEREFORE, Plaintiffs demand relief as follows:

a. Entry of a permanent injunction enjoining and restraining Defendant, its agents, successors, employees, and those acting in consort with Defendant from engaging in any employment practice which violates the ADA, Rehabilitation Act, or Section 1983, or discriminates against an employee for exercising his or her rights under those laws.

b. Entry of judgment awarding Plaintiffs past and future lost pay and benefits in such amount as established by evidence at trial;

c. Entry of judgment awarding Plaintiff compensatory damages in an amount to be determined by a jury to fairly and fully compensate Plaintiff for the mental and emotional distress caused by Defendants' conduct.

d. Entry of judgment assessing punitive damages against Defendant to punish it for wrongful conduct and to deter future conduct of this nature;

e. Entry of judgment awarding Plaintiff her costs, expenses, and attorney's fees incurred pursuant to the ADA, Rehabilitation Act, Section 1983, and F.R.C.P. 54;

f. Entry of an order reinstating Plaintiff's employment or, in lieu thereof, an award of front pay;

g. Pre-judgment and post-judgment interest at the highest rate permitted by law, and

h. Such other and further relief as the Court deems just and equitable.

Dated at Milwaukee, this October 14, 2025

                          Respectfully submitted,

                          PADWAY & PADWAY, LTD.
                          Attorneys for Plaintiff

                          By: /s/ *Aaron A. DeKosky*
                                  Aaron A. DeKosky
                                  SBN: 1081404

**P.O. ADDRESS:**
Padway & Padway, Ltd.
5150 N. Port Washington Rd.
Suite 151
Milwaukee, WI 53217

Phone: (414) 277-9800
Fax:    (414) 277-0189
adekosky@padwaylaw.net